SAMPSON et al. v. CAMPERDOWN COTTON MILLS.

Ex parte McBEE.

(Circuit Court, D. South Carolina. December 21, 1894.)

1. LANDLORD AND TENANT—ASSIGNMENT OF LEASE—STATUTE OF FRAUDS.

M. leased certain lands in South Carolina to the C. Mills, a corporation, the lease giving express permission to the lessee to erect buildings, and pull down or change the same during the term. The C. Mills became insolvent, and its property, including the lease, was sold by a receiver to H. and his associates, who organized a new corporation, the C. Cotton Mills, which took possession of the property of the former corporation and of the leased premises, but without any assignment of the lease or other writing from H. and his associates. Subsequently, the C. Cotton Mills made a mortgage of its personal property to S., minutely enumerating sundry machines, furniture, etc., and including "all personal property of whatever nature, on the premises of the C. Cotton Mills, or in any manner belonging to them." S. brought his action to foreclose the mortgage, in which a receiver was appointed, who notified the lessor of his intention to surrender the lease, and subsequently advertised the personal property for sale, following the enumeration in the mortgage of machines, etc., and adding, after such enumeration, "all other personal property on the premises belonging to the C. Cotton Mills, and covered by the mortgage." S., having purchased the mortgaged property at the receiver's sale, was proceeding to tear down and remove a warehouse erected on the leased premises by the C. Cotton Mills for use in its business. M., the lessor, filed his petition in the cause to restrain such removal. *Held,* that the C. Cotton Mills was never a tenant of M., no written assignment of the lease having been made as required by the statute of frauds of South Carolina.

2. TRADE FIXTURES—WHEN REMOVABLE.

*Held,* further, that while, under the general rule as to trade fixtures or under the provision in the lease as to pulling down buildings, the lessee might have removed the warehouse during the term, and while in possession of the premises, its right to do so did not continue after its possession ceased and was terminated, as to any right of the C. Cotton Mills, by the receiver's notice of his intention to surrender the lease.

3. SAME—WHEN REALTY AND WHEN PERSONALTY.

*Held,* further, that, even if the right existed to remove a building erected on the leased premises, such building, until the right was exercised by an actual removal, was part of the realty, and not included in the mortgage or sale of personal property.

4. JUDICIAL SALE—SUFFICIENCY OF ADVERTISEMENT.

*Held,* further, that the form of the advertisement was not such as to give notice to persons, not otherwise informed, that a building on the leased premises was intended to be included in the sale, and a sale, made under such advertisement, would not be held to include such building.

This was a suit by O. H. Sampson & Co. against the Camperdown Cotton Mills for the foreclosure of a mortgage. Vardry E. McBee filed an intervening petition. A rule to show cause was issued to the plaintiff, purchaser at the foreclosure sale, to which he filed a return.

Cothran, Wells, Ansel & Cothran, for complainants.
Julius H. Heyward, for petitioner.

SIMONTON, Circuit Judge. The Camperdown Cotton Mills, a corporation, executed to the complainant in March, 1893, a mortgage of its personal property. The description of the property mortgaged

begins thus: "125 H. P. Buckeye automatic cut-off engine, two steam boilers, one steam pipe, one two-beater opener, 56 36-inch Wellman cords, with railway, troughs, and fixtures complete;" going on and giving in minute detail, article by article, the machinery and appliances used in a cotton mill.     After this long and minute detail come these words in a separate paragraph: "All personal property of whatever nature on the premises of the Camperdown Cotton Mills, or in any manner belonging to them, including property loaned to others or held by other parties on commission or storage for Camperdown Cotton Mills."     This mortgage was foreclosed in the main cause, and the receiver appointed thereunder was instructed to sell at public auction, after due advertisement, the property mortgaged on a day fixed by the court.     This sale took place.     In his advertisement of sale the receiver followed the description of the property in the mortgage in its minute detail, changing, however, the punctuation, and ending the description as follows: "Two watchman's clocks, two sets harness, sundry carpenters' and masons' tools, six wheelbarrows, all other personal property on the premises belonging to the Camperdown Cotton Mills, and covered by the mortgage foreclosed in this case."     At this sale, under this advertisement, O. H. Sampson became the highest bidder, and was declared the purchaser.     The date of the sale was 31st of October, 1894.     On the 24th of November thereafter, O. H. Sampson sent certain workmen to tear down the principal warehouse on the premises, heretofore occupied by the Camperdown Cotton Mills, claiming that he had purchased it as a part of the mortgaged property.     Thereupon this petition was filed.     The warehouse was put up by the Camperdown Cotton Mills for the purpose of storing cotton, used in its business of manufacture, and is affixed to the freehold.     If it passed at this sale, it did so because it was included in the words "all personal property of the Camperdown Cotton Mills."     The Camperdown Cotton Mills conducted its business upon certain leased premises in Greenville, S. C.     The lease was executed by Alexander McBee and Vardry E. McBee, in 1876, to the Camperdown Mills, another corporation, for a term beginning March 1, 1876, and ending March 1, 1906.     The lease is to that corporation and its successors and assigns, and does not require the assent of the lessees to any assignment of the lease.     The Camperdown Mills became insolvent, passed into the hands of a receiver appointed in the state court; and all its property, including this lease, was sold in 1885 at public auction by the receiver to H. P. Hammett and his associates.     The deed, executed 3d August, 1885, conveys the entire property, including the lease, to H. P. Hammett and his associates, naming each of them and his proportion of interest, habendum to the said H. P. Hammett and his associates above named, according to their respective interest as above set forth, and their and each of their executors, etc., forever.     At the session of the general assembly held in November following this purchase and conveyance, Hammett and his associates were incorporated as the Camperdown Cotton Mills, the act reciting the above-named purchase by them. 19 St. at Large S. C. 347.     The new corporation was placed in possession of all the property of the old company and of the leased prem-

ises.   No deed was made, and, as far as this record shows, no writing whatever attended this transfer.   When, in its turn, the Camperdown Cotton Mills failed and went into the hands of a receiver, the receiver, within a month after his appointment, notified Vardry E. Mc Bee, the petitioner, who in the meantime had become sole owner of the fee in the leased premises and the lease, that he did not intend to undertake the lease, and, as far as lay in his power, he surrendered it, notifying him of his intention to turn over the possession of the leased premises as soon as practicable and the court shall direct.   V. E. McBee to this, in substance, replied, denying the right of the receiver to destroy the validity of the lease, and notifying him that he would insist on his rights thereunder.   The matter comes up on a rule issued upon the petition of O. H. Sampson to show cause why, etc., and on his return thereto.   The return claims that all the buildings erected by the Camperdown Cotton Mills on the leased premises for the purposes of its business were trade fixtures, and so personal property, included in the very terms of the mortgage; that, being so included, they were all sold at the sale for foreclosure, and passed to and are the property of the respondent, the purchaser at that sale. On the other hand, the intervener, owner of the fee in the land, denies that these buildings of a permanent character let into the freehold, became and are personal property; that, whatever may be the general law on the subject of trade fixtures, the erection of buildings and the interest of tenants in them were controlled by the terms of the lease, which permitted the erection of buildings and the pulling down and changing them, as may be deemed necessary and convenient, during the term of the lease only.   He further denies that the Camperdown Cotton Mills ever were his tenant, or occupied towards him the relation of lessee and lessor, there never having been any assignment to it of the lease in writing; that, whatever may be the conclusion on these points, these buildings were not sold at the sale, and did not pass to the purchaser, because nothing in the advertisement disclosed, and no notice was given at the sale, that structures on the land were a part of the property offered for sale.   Finally, he claims a lien for rent to accrue.   On this last point no reason is seen to change the conclusion heretofore reached in this same case.   The law of South Carolina gives no lien for rent to accrue.

At the threshold of this case it is best to ascertain the precise relations which the petitioner, the owner of the fee, and the Camperdown Cotton Mills occupied towards each other.   Were these relations those of lessor and lessee?   The original lease was to the Camperdown Mills.   It was assigned by deed to Hammett and his associates, to their and each of their executors, etc.   No assignment in writing was made to the Camperdown Cotton Mills.   The statute of frauds of force in South Carolina (Gen. St. c. 73) forbids the assignment, grant, or surrender of a lease unless by deed or note in writing.   Gen. St. § 2018.   See Charles v. Byrd, 29 S. C. 544, 8 S. E. 1; Davis v. Pollock, 36 S. C. 544, 15 S. E. 718.   McBee could not, under the terms of this lease, complain of any assignment by his lessee.   The law, however, protected him in prescribing a mode of assignment.   The Camperdown Cotton Mills, a corporation, was an entity distinct from Ham-

mett and his associates. It could contract with them. It was not bound by any of their acts, except in a corporate capacity. Mor. Corp. § 232. Property held by them in cotenancy did not, by the mere fact of incorporation, become its property. A deed was necessary to pass property which could only pass by the observance of formalities,—a deed or writing. A lease is of this character. The conclusion is evident that the relation of lessor and lessee never existed between McBee and the Camperdown Cotton Mills.

There can be no doubt that, as between lessor and lessee, buildings put up on the leased premises for the purposes of trade, distinct from the use of the land by the lessor, do not become a part of the land and vest absolutely in the owner of the soil, but are removable by the lessee during the term. Van Ness v. Pacard, 2 Pet. 137; Freeman v. Dawson, 110 U. S. 264, 4 Sup. Ct. 94; Wiggins Ferry Co. v. Ohio & M. Ry. Co., 142 U. S. 396, 12 Sup. Ct. 188. This last case, after quoting the conclusion reached in Van Ness v. Pacard, "that whatever is affixed to the land by the lessee for the purpose of trade, whether it be made of brick or wood, is removable at the end of the term," adds: "It is difficult to conceive that any fixture, however solid, permanent, and closely attached to the realty, placed there for the mere purposes of trade, may not be removed at the end of the term." These cases declare the right of removal only during the term. In one case quoted, in Van Ness v. Pacard, the right of removal is extended beyond the term, the tenant still remaining in possession. Penton v. Robart, 2 East, 88.

The law as laid down by the supreme court of the United States is in full accord with the law in South Carolina. Evans v. McLucas, 15 S. C. 70; Dominick v. Farr, 22 S. C. 585; De Laine v. Alderman, 31 S. C. 267, 9 S. E. 950; Padgett v. Cleveland, 33 S. C. 339, 11 S. E. 1069. But, although this is true, it by no means follows that while the buildings remain on the land, fixed in the soil, they are personal property. They can be removed, and can then become personal property; but, so long as they remain undisturbed, they are a part of the realty, and are in fact realty. They can become personalty by reason of an express agreement with the owner of the soil, or of an agreement, implied by law, that they can be severed from the realty, and thus regain their status as personal property. It is a long and well settled rule of the common law that everything which is annexed to the freehold becomes a part of the realty, and can only be severed from it, and reinvested with the character of personal and removable property, by the act of the owner of the land. Elwes v. Mawe, 2 Smith, Lead. Cas. (6th Am. Ed.) 267, and cases cited. If this be so, an instrument expressly creating a mortgage in personal property only will not create a lien on buildings not removed, and removable only.

The law allowing the removal of buildings erected by lessees for trade purposes, how does it apply to the case at bar? The rights of O. H. Sampson, the purchaser, depend on the rights of the Camperdown Cotton Mills. Shortly after his appointment, in May, 1894, the receiver notified the lessor that he would not be bound by the lease, and, so far as lay in his power, surrendered it. He represented

the Camperdown Cotton Mills. While, therefore, if the corporation was not the owner of the lease, and his action could not affect the existence of the lease as between the lessor and his original lessees, yet it did end the tenancy of the Camperdown Cotton Mills some months before the sale. Even then, if it be assumed that there had been a right of removal in the Camperdown Cotton Mills, that right was lost by the termination of its occupation.

In the note to Elwes v. Mawe, 2 Smith, Lead. Cas. (6th Am. Ed.) 280 (*257), the learned annotators say:

"Notwithstanding the liberal interpretation which the courts put on the right of the tenant to remove fixtures, it is well settled that, if he fail to exercise it during the continuance of the term or before surrendering the premises, he cannot re-enter for the purpose of exercising it afterwards, nor sustain an action against the landlord or those claiming under him for the recovery of that which he has voluntarily abandoned;" quoting many cases on this point.

In Wood, Landl. & Ten. § 532, the same doctrine is stated, and sustained by numerous authorities. Mr. Justice Miller, in Kutter v. Smith, 2 Wall. 497, addressing himself to this question, says:

"The doctrine concerning this class of fixtures [buildings], which is a strong innovation upon the common-law rule that all buildings become a part of the freehold as soon as they are placed upon the soil, has extended no further than the right of removal while the tenant is in possession."

Further, if we were to conclude that, notwithstanding the non-existence of a written assignment of the lease to the Camperdown Cotton Mills, that corporation, entering as it did, was entitled to the protection of the lease during its holding, we must come to the same conclusion. If parties enter into a contract without express reference to the general law controlling contracts of that character, the law enters into and becomes a part of the contract. But if the contract, in its terms, departs from the general law, the terms of the contract control. In the contract between the lessors and the lessee we find two provisions, one permitting the lessees to remove any and all the machinery in the mill within three months after the end of the term. This express provision, giving a qualified right of removal, would seem to exclude the idea of a general right. "Expressio unius," etc. The other provision permits the erection of buildings upon the premises, and during the term the pulling down or changing them, as may be deemed convenient or necessary. This is a distinct recognition of the right of the lessee to declare his assent to the erection of buildings, and also of his right to give such consent with modifications; that is, to erect, pull down, or change buildings during the term. This cannot mean to remove them after the term has ended.

There is another view of this case bearing on the question made by the intervention. The advertisement is so worded and punctuated that no notice whatever was given to those of the public who attended the sale at auction that the purchaser would get these buildings. Prima facie, they were a part of the freehold, inseparable therefrom. Reid v. Kirk, 12 Rich. Law, 54, 64. The only part of the advertisement which is now supposed to cover them are the words "all other personal property on the premises belonging to

the Camperdown Cotton Mills and covered by the mortgage fore-closed in this case." These words come after, and are separated by a comma only from, a long list of mill apparatus and machinery, ending "clocks, tables, chairs, and other office furniture." "Noscitur a sociis." Insurance Co. v. Hamilton, 12 App. Cas. 484, 38 Moak, 433. The natural conclusion is that they embrace the odds and ends of similar articles to those mentioned before them. A sale under these circumstances, even if the mortgage could cover build-ings not severed from the freehold in the term "personal property," was altogether to the advantage of the well-advised mortgagee, and to the disadvantage of every one else. Sales made under judicial proceedings "are always regarded as under the control of the court, and subject to the power to set them aside for good cause shown, and to open them at any time before they are confirmed, if the cir-cumstances of the case require the exercise of that power." Blossom v. Railroad Co., 3 Wall. 207; Mayhew v. Land Co., 24 Fed. 215. The sale under this advertisement did not carry any buildings erected on the leased premises.