[L. A. No. 19169.   In Bank.   Dec. 10, 1946.]

TRABUE PITTMAN CORP., LTD. (a Corporation), Plaintiff and Appellant, v. COUNTY OF LOS ANGELES et al., Defendants and Appellants.

Holbrook & Tarr, Leslie R. Tarr, Freda B. Walbrecht and W. Sumner Holbrook, Jr., for Plaintiff and Appellant.

J. H. O'Connor and Harold W. Kennedy, County Counsel, S. V. O. Prichard, First Assistant County Counsel, A. Curtis Smith, Deputy County Counsel, Ray L. Chesebro, City Attorney, Louis A. Babior and Wilbur Bassett, Deputies City Attorney, for Defendants and Appellants.

Robert W. Kenny, Attorney General, John L. Nourse and James E. Sabine, Deputies Attorney General, Dixwell L. Pierce and F. S. Wahrhaftig as Amici Curiae, on behalf of Defendants and Appellants.

SPENCE, J.—Plaintiff and defendants have instituted separate appeals from a money judgment entered in favor of plaintiff in an action brought to recover taxes paid under protest, which appeals have been consolidated.

Plaintiff is the owner of a building leased to the Bank of America National Trust and Savings Association. Defendants are the county of Los Angeles and the city of Los Angeles. Section 5219 of the Revised Statutes of the United States (12 U.S.C.A. § 548) permits the taxation of real property belonging to national banking associations "to the same extent, according to its value, as other real property is taxed." No provision is made in the federal statutes for taxation of personal property belonging to national banking associations. Article XIII, section 16-1(a), of the California Constitution provides for a tax measured by a national bank's net income in lieu of all other taxes, except taxes on real property.

The judgment entered by the trial court granted plaintiff a recovery of taxes, paid under protest, upon tellers' cages, partitions, coupon booths, counters, and certain other improvements installed by the lessee bank and assessed to the plaintiff as improvements to real property. Plaintiff appeals from the judgment entered, claiming that it should have included a recovery of taxes, paid under protest, upon a vault door and door frame, installed by the lessee bank and similarly assessed. On the other hand, defendants appeal from

the judgment claiming that plaintiff was not entitled to recover any of the taxes in question.

Thus the main question to be decided is whether the improvements installed in plaintiff's building by the Bank of America, a national banking association, and entered upon the tax rolls of defendants for the year 1941, constituted real property for the purpose of taxation and were therefore taxable as such, or whether such improvements remained personal property of a national banking association and were therefore not taxable. ■ What constitutes real property for taxation purposes, within the meaning of federal law as well as the state Constitution, is determinable by the law of this state so long as there is reasonable basis for the determination and no discrimination against federal instrumentalities. (*Reconstruction Finance Corp.* v. *County of Beaver,* 328 U.S. 204 [66 S.Ct. 992, 90 L.Ed. 1172].) While plaintiff's complaint alleged certain discrimination on the part of the assessor, that question was not passed upon by the trial court. The trial court first proceeded to take evidence for the purpose of determining whether the improvements in question constituted real or personal property for the purpose of taxation, and after announcing its determination that all improvements in question other than the vault door and door frame were personal property, plaintiff's counsel stated that the question of discrimination would not be further pursued. The question of alleged discrimination is therefore not before us on this appeal.

During the years 1930 and 1931, plaintiff constructed, at the corner of Rimpau Avenue and Washington Boulevard in the city of Los Angeles, a building designed for the occupancy of stores and a supermarket. No part of the building was especially constructed or designed for use as a bank. The corner store, after having been occupied by a drug store and a dress shop, was leased by plaintiff on July 31, 1936, for a term of six years to the Bank of America for the purpose of establishing a branch bank. The cost of improvements, exclusive of the disputed items, was $11,630.36. At the expiration of the lease the premises were again leased to the bank for a new term of five years ending July 31, 1947. The leases contained the following pertinent provisions:

"The lessee accepts the said premises in the condition existing at the time of execution of the within lease, and it is

agreed between the lessor and the lessee that all alterations, additions and repairs to be made to said premises, including the installation of vaults, vault doors and safe deposit boxes, together with bank fixtures and equipment necessary for the operation of the lessee's business in said premises, shall be made to said premises at lessee's own cost and expense.

"It is agreed that upon the expiration of this lease or upon the expiration of any extension, renewal or sooner termination thereof, lessee may remove all or any part of the furniture, fixtures, vaults, vault doors, vault door frames, safe deposit boxes, business equipment and all other improvements and personal property placed in, on or about said premises by lessee or by any predecessor of lessee, but it is agreed that upon the expiration of said term or any renewal, extension or sooner termination hereof, lessee shall not be required to remove the fixtures, vaults, vault doors, safe deposit boxes and improvements set forth above or any part thereof unless it elects so to do. . . ."

The lessee bank redesigned the exterior of plaintiff's building so as to make it more available for banking purposes and conformable in appearance to that of a bank. Brick and tile bulwarks were inserted on the original foundation walls, window space was cut down, and the entrance door was altered. Interior alterations included the construction of a vault room and the installation of a vault door, counter line, partitions, tellers' cages, wickets, etc. The vault room, built of reinforced concrete, was approximately 17 feet long, 8½ feet wide, with a door opening 7 feet 5 inches high by 3 feet 6 inches wide. In its complaint on file in the instant action, plaintiff makes the following concession in regard to the vault room and store front of the building:

"That at all times since their erection, and for the tax years 1937-38 to and including the current tax year 1941-42, said store front and vault room have been assessed and taxed, without any objection by plaintiff LANDLORD or lessee NATIONAL BANK as to such assessment and tax, to plaintiff LANDLORD, as a part of the aforesaid improvements and building;

"That both plaintiff LANDLORD and lessee NATIONAL BANK have at all times conceded, and do now concede, that, for tax purposes, the aforesaid store front and concrete vault room are improvements properly taxable to plaintiff LANDLORD as a part of the aforesaid building."

The bank installed, in the opening into the vault, a steel vault door frame and door comprising one unit. The door was 3½ inches thick, polished steel finish, and had a double combination and a triple time lock. Wooden wedges inserted at the top of the door and the frame held the door and frame in its vertical position. An inner air space or vestibule, approximately 3 inches in width at the sides and top walls, was composed of 3-inch by 3-inch angles and plates. Concrete grouting, in which crushed rock or gravel was intermixed with cement, was poured into this air space. When hardened the concrete grouting formed a hard and permanent attachment between the vault door frame and the vault room wall or vault door opening.

The door and door frame unit which was installed was a second-hand one taken from the bank's warehouse where a stock of used vault door frames and doors was kept on hand. It had an original cost of $1,800 to $1,900. The value thereof at the time of installation was estimated at $1,500. The counter line, with its partitions and wing appurtenances, and the coupon booths were attached to the building by drilling holes in the concrete floors into which were fitted wooden pegs to which a plate board was nailed. The wing through which there was a swinging door was steadied by a metal bracket attached to additional pegs fitted into the floor, and the door plates of the coupon booths were likewise set into the floor.

During the 1941 assessment period, after the decision of this court in the case of *San Diego Trust & Savings Bank* v. *County of San Diego*, 16 Cal.2d 142 [105 P.2d 94, 133 A.L.R. 416], the Los Angeles county assessor added to the figures, which he had in previous years fixed as the assessed value of the improvements, the sum of $660 as representing the increase in the assessed value of the improvements by reason of the attachment thereto of the bank vault door and frame. A figure of $910 was fixed as representing the increase in the assessed value of the improvements by reason of the attachment of some of the other equipment such as counter lines, tellers' cages, wickets, and coupon booths. Prior thereto the bank had notified the county assessor in writing of its claim that the vault door and other banking equipment were personal property belonging to it and should not be assessed to plaintiff landlord as constituting a part of the improvements.

The Board of Supervisors of Los Angeles County, sitting as

a board of equalization, denied an application for a reduction of the assessed valuation placed upon plaintiff's property by reason of the above-mentioned improvements. Plaintiff paid the tax under protest and instituted this suit.

The trial court found "that on the first Monday of March, 1941, the bank vault door frame and bank vault door installed on said premises by the lessee National Bank were and had become integral parts of the building of the Plaintiff herein, but the Court also finds that the remaining banking fixtures assessed by the Assessor herein were trade fixtures and should have been classified by the Assessor as personal property of the lessee National Bank." Other findings and the conclusions of law indicate that the holding that trade fixtures were personal property for purposes of taxation was based upon the fact that owing to the manner of annexation they were capable of severance from the freehold without damage to either, and were subject to removal.

For the reasons hereinafter stated, we conclude that the assessment should stand in its entirety. We are in agreement with the findings and conclusions of the trial court with respect to the vault door and door frame, but are further of the view that since the other improvements in question were found to be trade fixtures, they were likewise properly assessed as improvements to the realty.

While it is conceded that the exterior alterations and vault room were improvements properly taxable to plaintiff, and although the appeal of plaintiff involves the vault door and door frame while the appeal of defendant involves the remaining improvements, we believe that, for the purposes of this case, all such improvements fall in the same category. The instant case, insofar as the vault door is concerned, is controlled by the decision in the San Diego Bank case. The facts there were substantially the same as here except that some of the buildings were owned by the banks occupying them while others, with one exception, were held under leases longer in duration than those entered into between plaintiff and its lessee here. Plaintiff relies upon the foregoing as a material distinguishing circumstance. However, the length of a lease cannot be made the criterion as to what constitutes a fixture for taxation purposes. To hold the length of a lease to be of controlling importance would furnish an easy means of circumvention of taxation. Moreover, the determination

here will indicate to local assessors the course to be followed by them in future years, but uniformity of taxation cannot be attained unless a uniform classification of real and personal property is established. Just as assessors are not bound by private agreements, they should not be frustrated or hindered in performing their vital functions by the necessity of ferreting out the often undisclosed and secret intentions of lessors and lessees relative to the terms of a lease. For the most part, assessors must be allowed to act on the basis of outward appearances. Furthermore, for reasons that will hereinafter be more fully discussed, it was incumbent upon plaintiff not merely to show that the vault door was a trade fixture, but that it would not have become part of the real property if it had been similarly installed by the owner of the land.

Plaintiff, while contending that the improvements installed by the lessee bank, other than the vault door and door frame, constitute trade fixtures, further urges that trade fixtures are personal property. Defendants contend: (1) That as a matter of law in this state trade fixtures are improvements to the realty for the purposes of taxation; and (2) that the bank equipment here involved constitutes a unit for use which gives to it the character of realty within the meaning of the holding of this court in *Southern Cal. Tel. Co.* v. *State Board of Equalization,* 12 Cal.2d 127 [82 P.2d 422]. Plaintiff rejoins that there is no factual similarity between this and the cited case.

Defendants contend that the law of this state dealing with the status of trade fixtures in general has required, and in the interest of uniformity of taxation should require, that trade fixtures be characterized as real property for taxation purposes, and not as personal property as held by the trial court. They are supported in this contention by the attorney general of this state who, by leave of court, appears on behalf of taxing agencies not parties to the action. We believe that there is merit in such contention and, after careful consideration, have concluded that it must be sustained.

There can be uniformity of taxation only to the extent that there is a uniform classification of real and personal property. Disregard of any distinction between improvements installed by tenants and improvements installed by an owner of property insofar as taxation is concerned expedites the work of the assessor and tends toward uniformity. To classify trade

fixtures as real property is not to obliterate the distinction between fixtures and trade fixtures for all purposes, nor to introduce an innovation into the law of trade fixtures. ▇ It is well settled that for purposes of taxation the definitions of real property in the revenue and taxation laws of the state control whether they conform to definitions used for other purposes or not. (Const., art. XIII, § 13; *Ventura County* v. *Barry*, 207 Cal. 189, 195 [277 P. 333]; *Western Union Tel. Co.* v. *Modesto Irr. Co.*, 149 Cal. 662, 666 [87 P. 190, 9 Ann. Cas. 1190]; *People* v. *Smith*, 123 Cal. 70, 75 [55 P. 765]; *Jameson Petroleum Co.* v. *State*, 11 Cal.App.2d 677, 680 [54 P.2d 776]; 2 Cooley, Taxation (4th ed.) § 558, p. 1218.)

Section 104 of the Revenue and Taxation Code declares that real estate shall include "improvements," and section 105 defines improvements as including "fixtures." No exception is made in the case of trade fixtures. According to Burby a trade fixture is merely a particular type of fixture, one for which the law makes a special provision permitting its removal under certain circumstances by a lessee from the lessor's real property to which it has been annexed. (See Burby, Hornbook of the Law of Real Property (1943) § 24, p. 28.) ▇ Section 660 of the Civil Code defines "fixtures" as things that are permanently resting upon or attached to the land or building, but the fact that a trade fixture is removable under Civil Code, section 1019, does not, as plaintiff contends, necessarily negative such element of permanence. We have already indicated that for the most part assessors must be allowed to act on the basis of outward appearances. Moreover, in distinguishing permanence from transitoriness it is not necessary to identify it with perpetuality. (*Southern Cal. Tel. Co.* v. *State Board of Equalization, supra,* 12 Cal.2d 127, 136.) "It appears to be sufficient that it [the article annexed] is intended to remain where placed as long as the land or building to which it is annexed may be used for the same purpose." (36 C.J.S., Fixtures, § 2, p. 900.) "It is sufficient if the article shall appear to be intended to remain where fastened until worn out, until the purpose to which the realty is devoted has been accomplished or until the article is superseded by another article more suitable for the purpose." (*San Diego Trust & Savings Bank* v. *County of San Diego, supra,* 16 Cal.2d 142, 151; 26 C.J. 657.)

▇ The rule in reference to trade fixtures arose out of

commercial necessity for the limited purpose of protecting the tenant in ownership of certain kinds of property. It generally has no application between other parties in other relationships. (Bronson on Fixtures, § 8, p. 21; Tiffany, Real Property (3d ed.) § 617, p. 599.) The question as to whether an improvement is a trade fixture most often arises in regard to an asserted right of removal. It may be conceded that many courts and writers have treated trade fixtures as personal property insofar as the tenant's right of removal was concerned. (See *American Steel & Iron Co.* v. *Taft,* 109 Vt. 469 [199 A. 261, 263]; *Snow* v. *Smith,* 86 Vt. 58 [83 A. 269, 270]; *Wagner* v. *Cleveland & T. R. Co.,* 22 Ohio St. 563 [10 Am.Rep. 770]; *Globe Marble Mills Co.* v. *Quinn,* 76 N.Y. 23, 26 [32 Am.Rep. 259]; *Davies* v. *Iroquois Gas Corp.,* 161 Misc. 103 [292 N.Y.S. 111, 114]; *Cohen* v. *Wittemann,* 100 App.Div. 338 [91 N.Y.S. 493, 497]; 2 Taylor, Landlord and Tenant (9th ed.) § 549, p. 173.) Regardless of whether such characterization was strictly accurate or necessary in view of the right of removal which existed in any event, it is obvious that it can have no bearing upon what the characterization should be for other purposes. "The nature of this right of removal has been explained in two ways: by supposing that the chattel nature of the thing is preserved after its annexation, or, by considering that the thing ceases to be a chattel by being affixed to the land, and becomes real property, but reducible again to a chattel state by separation from the realty." (Ewell, A Treatise on the Law of Fixtures (2d ed.) p. 122; Ferard, Fixtures, 10.)

Where the dispute did not solely arise between the landlord and tenant, trade fixtures, while annexed, have been regarded by this court as fixtures for certain purposes and as a part of the realty. (*San Francisco Breweries* v. *Schurtz,* 104 Cal. 420 [38 P. 92]; *People* v. *Klopstock,* 24 Cal.2d 897 [151 P.2d 641].) If they are not removed during the term of the tenancy or within a reasonable time thereafter, they remain part of the realty. (*Wadman* v. *Burke,* 147 Cal. 351 [81 P. 1012, 3 Ann.Cas. 330, 1 L.R.A.N.S. 1192]; *Earle* v. *Kelly,* 21 Cal.App. 480 [132 P. 262].)

In *San Francisco Breweries* v. *Schurtz, supra,* 104 Cal. 420, the dispute over ownership of trade fixtures was between a mortgagee of the leasehold premises who had foreclosed and an attaching creditor of the mortgagor. In holding for the mortgagee, this court said at page 427: ". . . the fixtures at-

tached by a lessee to leased property become a part of the realty and remain so until they are severed. While so attached a mortgage of the leasehold estate covers the fixtures, and on foreclosure they are sold as a part of the realty. (*McNally* v. *Connolly,* 70 Cal. 3 [11 P. 320]; Ewell on Fixtures, 275; Jones on Mortgages, secs. 426, 435.)''

In *People* v. *Klopstock, supra,* 24 Cal.2d 897, the point in controversy was the matter of participation in the compensation award incident to the state's exercise of its right of eminent domain. In upholding the right of the tenant to participate, McAdam, Landlord and Tenant, fifth edition, section 10, pages 23-25, was quoted at page 903 as follows: ''The State's appropriation of land, unless qualified when made, is an appropriation of all that is annexed to the land whether classified as buildings or as fixtures. . . . *Trade fixtures are regarded as personalty as between the tenant and owner [of the land] so far as the right of removal is concerned, but as between the tenant and the condemning party they are regarded as a part of the realty for the purpose of making compensation, so long as they remain fixtures,* . . .'' (Cf. *City of Los Angeles* v. *Hughes,* 202 Cal. 731 [262 P. 737]; *In re Allen Street and First Avenue,* 256 N.Y. 236 [176 N.E. 377]; *In re Gratiot Ave., City of Detroit,* 294 Mich. 569 [293 N.W. 755].)

The view that trade fixtures, removable by a tenant, are a part of the realty until removed represents the weight of authority elsewhere and is regarded by Tiffany as the ''much sounder view.'' (See Tiffany, Real Property (3d ed.) § 620, p. 605; *Freeman* v. *Dawson,* 110 U.S. 264, 270 [4 S.Ct. 94, 28 L.Ed. 141]; *Sampson* v. *Camperdown Cotton Mills,* 64 F. 939, 942; *Looney* v. *Trimount Theatres, Inc.,* 282 Mass. 275 [184 N.E. 683, 684]; *Brown* v. *Wallis,* 115 Mass. 156, 158; *Guthrie* v. *Jones,* 108 Mass. 191, 196; *Carlin* v. *Ritter,* 68 Md. 478, 480 [13 A. 370, 16 A. 301]; *Donnelly* v. *Thieben,* 9 Ill.App. 495, 499-500; 36 C.J.S., Fixtures, §§ 35, 37, pp. 970, 972.) Taylor in his work on Landlord and Tenant states that ''as a general proposition, it is correct to say that fixtures are completely personalty as to the lessee's right of removal; but otherwise realty.'' (2 Taylor, Landlord and Tenant (9th ed.) § 549, p. 174.) Jones, in discussing this subject, states that ''The doctrine of the law of landlord and tenant is not that the articles attached to the freehold remain chattels for the purposes of removal, but that, under certain circumstances, parts

of the freehold may be removed by the tenant.'' (Jones on Landlord and Tenant, § 710, p. 831.) Burby states that ''It might be contended that a tenant who affixes a chattel to leased premises does not thereby intend permanently to improve the freehold, and, accordingly, a chattel so attached should not be considered a fixture. But the courts have not adopted this reasoning. If the chattel attached would be considered a fixture, were it attached by the owner of the realty, it is a fixture if attached by a tenant. Thereafter, the thing is considered as a part of the realty, the tenant retaining the privilege of removal under the trade fixture doctrine.'' (Burby on Real Property (Hornbook Series, 1943) § 24, p. 28.)

Some courts have advisedly refrained from attempting to lay down fixed and definite rules that would determine the legal character of removable fixtures on all occasions. Ewell, in his treatise writes: ''There is some confusion and looseness of expression among the authorities on this subject, occasioned probably by the fact that in some relations and for some purposes, as in favor of the execution creditors, or the executors of a tenant, the chattel nature of the thing is not lost by its annexation. For many, if not most purposes, however, during the continuance of the annexation, the thing is treated as a parcel of the realty; and though it is in the power of the party making the annexation to reduce the thing again to the state of goods and chattels by severance, yet until so severed, it remains a part of the realty; and this seems to apply as well to trade fixtures as to other fixtures.'' (Ewell, Treatise on the Law of Fixtures (2d ed.) pp. 122-124.)

Brown in his recent work on personal property states that ''The rights and interests which persons have in fixtures and particularly in tenant fixtures, are not for all purposes real property rights or personal property rights but they constitute a shadow zone of rights in which both types intermingle, rights of the one type being emphasized for some purposes and rights of the other type for other purposes. . . . In harmony with the concept that property attached to the freehold by the lessee becomes a part thereof as 'real property' and remains such until it is disannexed, are the taxation cases which hold that in the absence of special or peculiar statutory enactments property or buildings affixed to or erected upon land are taxable as a part of the real estate.'' He further states that it seems desirable to permit assessors to act on the basis of outward appearances and not compel them to inquire

into the legal status and relationship of all persons who might conceivably have an interest in a particular trade fixture or in the land. (Brown on Personal Property (1936) § 144, pp. 659-661.)

█ Further support for the classification of trade fixtures as real property for taxation purposes is found in the fact that, in the last analysis, the law with respect to tenant's trade fixtures has its foundation in an implied contract resulting from the landlord-tenant relationship. (Cf. *R. Barcroft & Sons Co.* v. *Cullen,* 217 Cal. 708, 711 [20 P. 655]; *General Petroleum Corp.* v. *Schefter,* 141 Ore. 349 [16 P.2d 645, 647]; *Howard* v. *Fessenden,* 14 Allen (96 Mass.) 124, 128; *First Parish in Sudbury* v. *Jones,* 8 Cush. (62 Mass.) 184, 190; 6 Cal.Jur., § 186, p. 310.) The contract between the landlord and tenant may be express as well as implied; and if express, it may no doubt cover fixtures other than those generally deemed to be trade fixtures. █ It is well settled, however, that such contract, whether express or implied, is not effective against those not bound by the agreement; for example, innocent third persons. In such cases the intent that is material is that reasonably manifested by outward appearances. (See *Dauch* v. *Ginsburg,* 214 Cal. 540 [6 P.2d 952]; *Oakland Bank of Savings* v. *California P. B. Co.,* 183 Cal. 295 [191 P. 524]; *Commercial Bank* v. *Pritchard,* 126 Cal. 600 [59 P. 130]; *McNally* v. *Connolly,* 70 Cal. 3 [11 P. 320]; *Hammond Lumber Co.* v. *Gordon,* 84 Cal.App. 701 [258 P. 612]; *Standard Oil Co. of California* v. *Idaho Community Oil Co.,* 98 Mont. 131 [37 P.2d 660].) █ Similarly, the agreement of the parties, whether express or implied, is not binding upon the taxing authorities. (*San Diego Trust & Savings Bank* v. *County of San Diego, supra,* 16 Cal.2d 142; *Comstock* v. *Town of Waterford,* 85 Conn. 6 [81 A. 1059, 37 L.R.A.N.S. 1166]; *Milligan* v. *Drury,* 130 Mass. 428; *People ex rel. New York Edison Co.* v. *Wells,* 135 App.Div. 644 [119 N.Y.S. 1057]; *Ex parte Makepeace,* 31 N.C. 91.)

It is not necessary for us to determine here whether or not trade fixtures are properly classifiable as improvements to realty for all purposes, and we are not to be understood as making such determination. However, we are convinced that there is sound basis, both in reason and authority, for holding them to be such for the purposes of taxation. It is our view that in matters relating to taxation in this state, rules more

nearly conforming to those used in determining what constitutes fixtures as between grantor and grantee, vendor and vendee, or mortgagor and mortgagee, should apply rather than the rule used in determining what constitutes trade fixtures or removable fixtures as between landlord and tenant. "It is the purpose of uniformity of taxation that all property in the state carry its fair burden and contribute its just amount in taxation to the support of the various public bodies which levy taxes." (*County of San Bernardino* v. *Way,* 18 Cal.2d 647, 657 [117 P.2d 354].) But to hold the doctrine of trade fixtures operative in a tax matter merely because property is claimed under two ownerships instead of one would be to discriminate in favor of one owner and against another owner of similar property, not only because of the possibility of a differential between the real and personal property tax rates for a given year but because many special assessment districts impose burdens upon real property but not personal property. (See Const., art. XIII, § 14; *Southern Cal. Tel. Co.* v. *State Board of Equalization, supra,* 12 Cal.2d 127, 130.)

Plaintiff has urged that the factor to be used in determining the constitutional exemption of national banks from local taxation is the common acceptation of the term real property, as such was defined by statutes at the time of the adoption of the constitutional exemption on November 6, 1928. Statutory law was the same then as now but plaintiff relies mainly upon the case of *Woods* v. *Bank of Haywards,* 10 Cal.App. 93 [106 P. 730], for the proposition that by prior judicial determination improvements similar to those installed by the bank in the instant case were classified as personal property in 1928. However, that case involved nothing but the rights of lessor and lessee in trade fixtures. The above cited authorities from this jurisdiction and elsewhere show that trade fixtures have been generally classified as improvements to real property when the rights of third persons, including the taxing authorities, were involved.

Since oral argument plaintiff has called our attention to the case of *First Nat. Bank of Portland* v. *Marion County,* 169 Ore. 595 [130 P.2d 9]. In that case a national bank occupied certain premises under a lease. Improvements owned by it were assessed as real property to it instead of to the owner of the land and building. The holding of the court was merely that under Oregon statutes the various interests

in real property for purposes of taxation are not separable, and that the improvements should not have been assessed to plaintiff. The court expressly stated at page 16 [130 P.2d] : ''We are not here passing upon the question of whether the plaintiff's trade fixtures and equipment are real property or personal property within the meaning of those terms as used in our tax law. Nor are we deciding whether or not such trade fixtures and equipment may be taxed to the owner of the legal estate as fixtures annexed to or improvements of real property.''

Plaintiff also cites *Rittersbacher* v. *Board of Supervisors,* 220 Cal. 535 [32 P.2d 135], *County of Los Angeles* v. *Ransohoff,* 24 Cal.App.2d 238 [74 P.2d 828], and *RCA Photophone Inc.* v. *Huffman,* 5 Cal.App.2d 401 [42 P.2d 1059], as evidence of an administrative practice in some counties to assess machinery and other articles of trade as personal property. These cases arose subsequent to 1928, and further, fall short of showing a uniform practice of assessors throughout the state. Such cases must be read in the light of the questions which were presented and passed upon. In the two cases first mentioned, it was contended that the assessor had wilfully adopted and deliberately pursued an erroneous, discriminatory, and inequitable method of assessing different classes of property. No question was involved as to what constitutes real or personal property, and, without facts to indicate the contrary, it may be assumed that the various classifications referred to were made in conformance with law. In *RCA Photophone Inc.* v. *Huffman, supra,* the plaintiff contended that certain RCA photophone sound equipment had been assessed to the wrong person. No question was raised as to the propriety of the assessment as one of personal property. Moreover, an erroneous administrative construction does not become decisive no matter how long continued. (*Estate of Madison,* 26 Cal.2d 453, 463 [159 P.2d 630] ; *Whitcomb Hotel, Inc.* v. *California Emp. Com.,* 24 Cal.2d 753, 757-758 [151 P.2d 233, 155 A.L.R. 405].) This is so even though the statute is subsequently reenacted without change. (*Estate of Madison, supra.*) Without language indicating the contrary, it cannot be supposed that an erroneous administrative interpretation, if any, of the statutes defining ''real property'' was incorporated into the Constitution, instead of the true and correct definition.

We conclude that there was no error in the assessment. The primary problem of the assessor was to determine whether the improvements in question were fixtures. If they were fixtures they were taxable under Revenue and Taxation Code sections 104 and 105. The further fact that as between landlord and tenant, they might also have been trade fixtures was immaterial. It follows that the trial court erred in concluding that the ''remaining banking fixtures'' were personal property merely because they were trade fixtures. It is doubtful whether any decision in this state is contrary to the views we have expressed, but if there be any language found in *San Diego Trust & Savings Bank* v. *County of San Diego, supra,* 16 Cal.2d 142, *Southern Cal. Tel. Co.* v. *State Board of Equalization, supra,* 12 Cal.2d 127, or *Western Union Tel. Co.* v. *Modesto Irr. Co., supra,* 149 Cal. 662, which would tend to indicate that trade fixtures must be assessed as personal property, such language cannot be approved.

Having determined that all of the improvements in question were assessable as improvements to real property rather than as personal property, the question remains as to whom said improvements should have been assessed. This question was expressly left undecided in the San Diego Bank case (*supra,* 16 Cal.2d 142). The trial court in the instant case found that the vault door was capable of being separately assessed to the lessee national bank but that the law did not require the assessor to assess it separately to the lessee, and that it was permissible for the assessor to assess it to the owner of the building. Plaintiff contends that the tax on any of the improvements that were determined to be a part of the realty should have been assessed to the lessee bank, the owner thereof, and that failure to do so rendered the entire assessment void. It bases this contention upon section 405 of the Revenue and Taxation Code, which provides that taxable property shall be assessed to the persons ''owning, claiming, possessing, or controlling it,'' and upon section 602(g) of the same code, which is to the effect that the assessment roll shall show the cash value of improvements assessed to any person other than the owner of the land. Defendants argue that the finding and holding of the trial court as to assessment of the vault door is sound and contend that such is equally applicable to the trade fixtures. Further, defendants cite section 2188 of the Revenue and Taxation Code, which provides that ''Every tax on improvements is a lien on the taxable land on which they

are located, whether they are assessed to the landowner or to some other person''; and defendants contend that if there was any mistake, it was cured by section 613 of the Revenue and Taxation Code, which provides that ''A mistake in the name of the owner or supposed owner of real estate does not render invalid an assessment or any tax sale.''

Under the circumstances of this case we believe that the entire building, including all improvements, was properly assessed to the owner of the land. There is nothing in the cited code sections to indicate that a single building should not be assessed as a single improvement. Assessments for improvements constitute ''a lien upon the taxable land on which they are located,'' as well as ''against the property assessed.'' (Rev. & Tax. Code, §§ 2188, 2187.) The improvement assessment is required to be shown opposite the land assessment. (Rev. & Tax. Code, § 608.) The value of a building is not a summation of the values of the component parts valued separately. The vault door and other fixtures do not now necessarily have the same value that they had when segregated, but rather the value of the building to which they have been affixed has become enhanced, and it appears from the record that it was this increase in value that was actually taken into account by the assessor. As shown by the portions of the lease and plaintiff's complaint set out earlier herein, the right was reserved to the bank to remove *all improvements* placed in or on the premises by it. Plaintiff now concedes that the store front and vault, which were improvements installed by the bank, were properly assessed to plaintiff, and for similar reasons hereinabove indicated we are of the opinion that all other improvements were likewise properly so assessed. To hold otherwise would be to negative much of the gain toward expedition of the work of the assessor that results from his being able to assess all improvements as realty. An owner of a building may protect himself by contract against any increase in assessment and tax that may result from improvements thereto made by various tenants, and this would seem to be the preferable method of handling the situation rather than to burden the taxing authorities with the necessity of attempting to make multiple assessments upon various items of improvements embraced within a single structure. ''To require the county assessors to assess all trade fixtures in the names of the owners thereof as real property would impose upon them Herculean tasks and result principally in

confusion." (*First Nat. Bank of Portland* v. *Marion County,* 169 Ore. 595 [130 P.2d 9, 16].) In some other jurisdictions all interests in or to real estate are taxable as real property in the name of the owner of the land. (See 2 Cooley, Taxation (4th ed.) §§ 558, 559, pp. 1218, 1219; *First Nat. Bank of Portland* v. *Marion County,* [Ore.] *supra,* 130 P.2d 9; *Becker* v. *Mayor and Council of Borough of Little Ferry,* 126 N.J. 338 [19 A.2d 657].) As well stated by the Court of Errors and Appeals of New Jersey in the case last mentioned, at page 659 [19 A. 2d] : "Cases holding that the lessee may be taxed by reason of his interest in real estate do not relieve the landowner of his obligation. The fee cannot be carved to the disadvantage of the municipality. If the owner of land is desirous of avoiding taxes, which the tenant should pay, he may arrange so by contract. But the municipality in assessing land is not obliged to cast around to see who has a leasehold interest therein."

In any event (assuming but not conceding that the assessment to plaintiff was erroneous), the effect of the above-mentioned section 613 of the Revenue and Taxation Code would be at least to preserve the lien for the tax against plaintiff's land. (Rev. & Tax. Code, § 2188.) The assessment was not void. It imposed no personal liability against plaintiff but was against the property. (*Klumpke* v. *Baker,* 131 Cal. 80, 82 [63 P. 137, 676] ; see, also, *Webster* v. *Somer,* 159 Cal. 459 [114 P. 575] ; *Palomares Land Co.* v. *Los Angeles County,* 146 Cal. 530 [80 P. 931] ; *Henne* v. *County of Los Angeles,* 129 Cal. 297 [61 P. 1081] ; *McCracken* v. *Hummel,* 43 Cal.App.2d 302 [110 P.2d 700] ; *Interstate Realty & Improvement Co.* v. *Clark,* 77 Cal.App. 558 [247 P. 244].) The case of *Kern Valley Water Co.* v. *County of Kern,* 137 Cal. 511 [70 P. 476], relied upon by plaintiff, is not contrary to the foregoing conclusion as it is clearly distinguishable upon its facts. Furthermore, that case arose upon demurrer and the question of the effect of the provision in regard to mistake in the name of the supposed owner (then contained in § 3628 of the Pol. Code) was not considered.

For the reasons stated, it follows that the trial court erred in entering a judgment which allowed a recovery by plaintiff of any of the taxes in question. While it appears from the findings of fact and conclusions of law that the trial court allowed a recovery of the taxes paid on certain improvements and denied a recovery of the taxes paid on certain other im-

provements, the judgment entered in favor of plaintiff was a simple money judgment covering the former, which judgment must be reversed.

The judgment is reversed and as defendants have prevailed on both appeals, they are entitled to their costs on said appeals. (Rules on Appeal, Rule 26(a), 22 Cal.2d 1, 18.)

Gibson, C. J., Shenk, J., Carter, J., and Schauer, J., concurred.

Traynor, J., did not participate herein.