[Civ. No. 10505. Third Dist. Jan. 22, 1963.]

JOSEPH KOLSTAD, Plaintiff and Appellant, v. WILLIAM GHIDOTTY et al., Defendants and Respondents.

P. M. Barceloux, Burton J. Goldstein, Goldstein, Barceloux & Goldstein and Reginald M. Watt for Plaintiff and Appellant.

Rich, Fuidge, Dawson & Marsh, Charles C. Dawson, Jr., and Chester Morris for Defendants and Respondents.

VAN DYKE, J.*—This is an appeal from a summary judgment. Plaintiff's complaint alleged: On April 1, 1959, plaintiff was employed as a sawyer at a sawmill. For a long time prior to that date, defendants were the owners of the real property upon which the sawmill was located and, prior to the accident which occurred on that date, had leased the real property to a firm known as Caffey and Rice, with knowledge that the firm intended to and would use the leased premises to conduct a sawmill business thereon by operating the sawmill located upon the leased property. When the lease was entered into, the sawmill was dangerous and unsafe in that the sawyer's cage was not protected by guards as required by law, statute and safety order. Defendants knew, when they made the lease, or should have known, of the dangerous condition of the sawyer's cage and knew or should have known that the dangerous condition, together with the manner in which Caffey and Rice intended to use the real property, created an unreasonable risk of injury to any person employed as a sawyer to operate the saws of the mill. The negligence of the defendants proximately caused injury to plaintiff in that while employed as a sawyer at the mill, and using the sawyer's cage, plaintiff was struck and injured by a saw log.

 Respondents herein as defendants in the trial court moved for summary judgment and supported the motion by affidavits substantially as follows: That prior to June 7, 1954, William Ghidotty and Marian Ghidotty, his wife, were owners of certain real property on which a sawmill was located. That on June 7, 1954, they leased the real property for a term of five years; that simultaneously they sold the sawmill to Caffey and Rice and thereafter both sellers and buyers considered the mill to be the personal property of Caffey and Rice. That at all times thereafter, during the term of the lease, including the time when plaintiff in the action was injured, Caffey and Rice had complete control of the operations of the mill, were the only persons interested in the mill operation, and that the Ghidottys had no interest in, or any control whatsoever over the mill or its operation; that the tax rolls of the county for the years from 1954 to 1959 showed that the mill was assessed to Caffey and Rice as personal property; that they paid the taxes; that Caffey and Rice, when they purchased the sawmill from the Ghidottys desired to keep the mill in the same location in which it was, so they leased

*Retired Presiding Justice of the District Court of Appeal sitting pro tempore under assignment by the Chairman of the Judicial Council.

from the Ghidottys the real property upon which the mill was located for a period of five years. The appellant filed no affidavits in opposition to the motion for summary judgment.

Although the affidavits in support of the motion are somewhat informal in that they do not particularize with respect to the provisions of the lease or the particulars of the sale, yet in the absence of controverting affidavits we are justified in assuming that the lease created the usual estate for years in the property upon which, before the lease was made, the mill had been located, and that the sale was complete and passed title to the mill which included all of the operational machinery going to make up and implement a sawmill, including the sawyer's cage as a component part thereof. Further, that it was a fact that the lease and the instrument of sale, whatever it was, or the verbal sale, if such was the mode of making the sale, contained no reservations of any right on the part of the Ghidottys to control or direct the use of the real property whether for the operation thereon of the sawmill or otherwise, or to control or direct in any manner the operation of the mill, or even to require that a mill be operated on or off the leased premises.

It is of the essence of a lease of real property for a term of years that an estate for years is created in the land.

''A leasehold is an interest in land, and constitutes property, as much so as lands held in fee. This interest is carved out of a greater estate and belongs to the lessee subject to the covenants of his lease, while the larger estate, or the reversion, remains the property of the lessor. The tenant holds in his own right against the lessor, although under him, and against all the world; and his estate can no more be cut off, limited, or affected by the lessor or anyone else than can an estate in fee.'' (30 Cal.Jur.2d 130.)

While it cannot be determined from the affidavits in support of the motion for summary judgment, whether or not the sawmill, as that term is used in the pleadings and in the affidavits, was so constructed as to be a part of the land upon which it was situated, it does appear from the affidavits with reasonable clarity that there was by the sale, at least a constructive severance and that although not removed from the land by the purchaser, the mill became, by virtue thereof, personal property of the buyers. (Civ. Code, §§ 658-660.)

The result of what we have said is that the respondents are shown to have had no authority to direct, manage or

control the employment in which plaintiff was engaged at the time of his injury and likewise had no right to manage, control or exercise authority over the place of his employment. Respondents therefore were not employers of appellant and were not liable to furnish him a safe place to work. The sections of the Labor Code relied upon by appellant to cast liability upon respondents, as his employers, to furnish him a safe place to work and to obey applicable safety orders in respect to what constitutes a safe place to work have no application under the facts as shown by the affidavits in support of the motion for summary judgment. It is generally held that a lessor is not liable for noncompliance with an industrial safety order by a tenant who had employed the plaintiff and by parity of reasoning that a general contractor is not liable for injuries suffered by an employee of a subcontractor where the general contractor had no right of control over the activity prohibited by the safety order. In such cases landlords and general contractors are not employers of the injured workman within the meaning of the pertinent sections of the Labor Code. (*Atherley* v. *MacDonald, Young & Nelson, Inc.,* 142 Cal.App.2d 575, 581-582 [298 P.2d 700]; *Neuber* v. *Royalty Realty Co.,* 86 Cal.App.2d 596 [195 P.2d 501]; *Hayden* v. *Paramount Productions, Inc.,* 33 Cal.App.2d 287 [91 P.2d 231].)

We have said that it sufficiently appears from the affidavits that respondents did not lease the sawmill. They sold it. It is therefore unnecessary to discuss appellant's suggestion as to the liability of a landlord who leases defective premises. It is not alleged that there was any dangerous condition as to the land.

Finally, appellant states: "The defendants either sold or leased a sawmill which was dangerous because the sawyer's cage was not protected by guards. The lack of a guard was the proximate cause of plaintiff's injuries. That this factual situation creates liability is amply supported by authorities, including: [Citations.]"

 The liability of suppliers of chattels known to be dangerous for intended use is well stated in Restatement of the Law of Torts, section 388:

"One who supplies . . . a chattel for another to use, is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by a person

for whose use it is supplied, if the supplier (a) knows, or from facts known to him should realize, that the chattel is or is likely to be dangerous for the use for which it is supplied; (b) and has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition. . . .''

We think it must be said that the last condition stated could not exist in the case before us. A sawyer's cage must necessarily be a distinct and definite object and, whether or not in addition to whatever it takes to constitute a sawyer's cage, additional parts in the sense of guards are there, must necessarily be known to whoever is to use, or attempts to use or uses the sawyer's cage as a sawyer's cage in the operation of a mill. Guards would necessarily have to constitute some sort of additional structure around and about the sawyer's cage designed to ward off impact from objects, such as saw logs. In this case the plaintiff had pleaded the absence of guards as constituting the dangerous defect in the makeup of the sawyer's cage without designating or describing what the pleader means by his allegation that the cage was not guarded. The affidavits in support of the motion for summary judgment in their turn give no description of what would be or could be guards that might be added to a sawyer's cage. Nevertheless we think it must be said as a matter of law that guards would have to be something so substantial, so visible, so perceptive to the senses that it could not be said that the supplier of a sawyer's cage which was unguarded could have ''no reason to believe that those for whose use'' the sawyer's cage was supplied ''would realize its dangerous condition'' where the only dangerous condition alleged or considered was the lack of these physical, obvious guards.

We conclude that giving to the affidavits considered in connection with the pleadings their reasonable scope, it must be said that there was no triable issue which warranted a denial of the summary judgment and therefore that the judgment appealed from must be affirmed.

The judgment is affirmed.

Pierce, P. J., and Schottky, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 20, 1963.