[Civ. No. 10923. Third Dist. Feb. 4, 1965.]

STANDARD OIL COMPANY OF CALIFORNIA, Plaintiff and Appellant, v. STATE BOARD OF EQUALIZATION, Defendant and Respondent.

---

Pillsbury, Madison & Sutro, Sigvald Nielsen, Noble K. Gregory, Donald G. McNeil, James F. Kirkham and Aaron M. Peck for Plaintiff and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, Ernest P. Goodman and John J. Klee, Jr., Deputy Attorneys General, for Defendant and Respondent.

PIERCE, P. J.—The question on this appeal is whether the California sales tax applies to that portion of the gross receipts which represents the price of affixed equipment in a sale of a service station business. We affirm the trial court judgment holding such gross receipts taxable.

The facts are stipulated. Summarized, they are: Petrol Corporation was engaged in the operation of service stations

in California, such operations being carried on in all but a few cases upon leased land. Its leases provided that all improvements and equipment placed upon the leased property by Petrol "shall at all times be and remain the personal property of and belong to the Lessee, and Lessee shall have the right to remove said improvements or equipment at any time during the term hereof and also within thirty (30) days after the expiration or other termination of this lease."

After taking possession of the leased premises Petrol installed or replaced various items of service station equipment. Petrol was a retailer holding a seller's permit under the California Sales and Use Tax Law.

Standard purchased substantially all of Petrol's assets and assumed its liabilities. Between January 1, 1949, and March 31, 1953, Petrol assigned to Standard all of its service station leasehold interests, together with all buildings, equipment and improvements, including the equipment placed thereon by Petrol. The equipment included gasoline pumps, lifts and hoists, compressors, loading racks and accessories, and miscellaneous equipment. All were "transferred in place." The manner of affixation, described in detail in the stipulation, was that customary for such items.

The equipment was not severed at the time of the transfer nor immediately thereafter nor was it intended to be. Standard continued to operate the service stations and to use the equipment as before, removing and replacing some items from time to time as they became obsolete, or as replacements became desirable for other business reasons.

Respondent, State Board of Equalization, having determined the transaction to be a sale by a retailer of "tangible personal property" under the California sales and use tax, assessed a tax thereunder. Standard paid the tax under protest, claimed a refund, and brought this action to recover.

This is a case of first impression in California and, so far as we have been able to discover, in any other state having sales tax legislation. No constitutional question has been suggested and we deal solely with a matter of statutory construction: Did the Legislature intend to impose a tax on gross receipts of a sale of equipment under the circumstances described above?

Here analysis of what the Legislature intended to include as "tangible personal property" within the purview of the sales tax should begin with a consideration of the nature and purposes of the tax itself. ▮ First of all, it is not a tax

upon property, it is a tax upon "retailers" for the privilege of making "retail sales" and the tax is measured by the gross receipts from "retail sales." (Rev. & Tax. Code, § 6051.) "Sale" includes any transfer of title or possession "in any manner or by any means whatsoever, of *tangible personal property* for a consideration." (Rev. & Tax. Code, § 6006.) (Italics supplied throughout.) In *Select Base Materials, Inc.* v. *Board of Equalization,* 51 Cal.2d 640, the court states at pages 645, 646 [335 P.2d 672]: "It [i.e. the definition of sale quoted] coincides with the common-law definition of a 'sale' and is substantially the same as that used in the Uniform Sales Act. [Citations] It is reasonable to assume that the Legislature intended the basic definition of the word 'sale' to govern its interpretation in connection with 'gross receipts' for computation of the sales tax. (Rev. & Tax. Code, § 6012.)'' "A 'retail sale' or 'sale at retail' means a sale for any purpose other than resale in the regular course of business in the form of *tangible personal property.*" (Rev. & Tax. Code, § 6007.) "Tangible personal property" is defined as "personal property which may be seen, weighed, measured, felt, or touched, or which is in any other manner perceptible to the senses." (Rev. & Tax. Code, § 6016; *Roth Drug, Inc.* v. *Johnson,* 13 Cal.App.2d 720, 734 [57 P.2d 1022].) In the latter case it is stated at page 734: "The reason for distinguishing between tangible and intangible property for the purpose of taxation is very evident. The first is visible, accessible and easy to identify and levy upon, while the other is not so readily located or its value ascertained."

As regards the meaning of "in the regular course of business" (in § 6007) "[g]rammatically and logically . . . the phrase must modify the resale by the purchaser; a sale thus falls outside the definition of 'retail sale' only if the buyer is planning to resell the property in the regular course [of] his business. . . ." (Sho Sato, *The Sales Tax and Capital Transactions,* 45 Cal.L.Rev. 450, at p. 453.) [Significantly, Professor Sato also says (*op. cit.* p. 453): "As is apparent from this statutory definition, the purpose of the buyer in making the purchase is the determinative factor. If the principal purpose of the buyer is to use the property, rather than resell it, the sale is a retail sale. This is true even though the buyer might intend to resell the same property *when he no longer has any use for it.*"

Respondent's argument, reduced to simplest terms, is that the gross receipts from the retail sale of this equip-

ment must be taxed as "tangible personal property" because that is what it is. Affixed equipment, it says, may be either personal or real property depending upon several factors, including the nature of its use and the intent of the parties. Here a consideration of both of these factors makes it clear that *this* equipment is to be considered as personalty. We find this reasoning to be sound.

The nature of the use intended to be made of this property was made clear not only by the agreement between the seller and buyer but by their agreement with the owners of the leased properties. The equipment in the hands of the buyer—notwithstanding its affixation—was to be regarded at all times as personalty which the buyer could consume, remove, replace, and consume the replacement, etc., at its unrestrained will and pleasure. In other words, there was no distinction between the use to be made of this affixed equipment and the use of the unattached tools and equipment (i.e. wrenches, grease guns, etc.) of the service stations. The parties, by their express agreement, had just as effectively removed all possibility of classifying the equipment as real property (because of physical annexation) as though manual severance had taken place.

Consumption by the buyer (i.e. use other than for resale in the ordinary course of business) is, as we have pointed out, what the Sales Tax Act is intended to have its impact on. "The retail sales tax, although legally imposed on the retailer, is economically a *consumer's expenditure tax* since the burden of the tax is intended to be and is usually shifted to the consumers." (Sato: *op. cit.* p. 455, fn.22.)

Consideration of the manner in which gross receipts from the other items included in the sale were treated may aid in illustrating why gross receipts from the sale of the *affixed* equipment here must be deemed to fit within the framework of the Sales Tax Act. Clearly that portion of the gross receipts representing the transfer of the leases (a chattel real) was not taxable because, although personal property, it was not *tangible* personalty. Just as clearly, on the other hand, the unaffixed tools and equipment included in the sale were tangible personal property and the gross receipts therefrom were taxable. Clearly also, if prior to, at the time of, or as contemplated by the contract, a removal of theretofore-affixed equipment had been contemplated immediately after the sale, gross receipts therefrom would have been taxable. (See, e.g., *Market St. Ry. Co.* v. *California State Board of Equalization,*

137 Cal.App.2d 87, 92 [290 P.2d 20]—sale of railroad ties and rails.) Also, if theretofore unaffixed equipment had been purchased for the purpose of adding it as a permanent improvement of real property, the cost of such equipment would have been considered as a taxable gross receipt of the sale. (*General Electric Co.* v. *State Board of Equalization,* 111 Cal. App.2d 180 [244 P.2d 427]; *Overly Mfg. Co.* v. *State Board of Equalization,* 191 Cal.App.2d 20, 30 [12 Cal.Rptr. 391].) We cannot bring ourselves to the belief that it was the legislative intent that, although affixed property to become unaffixed and unaffixed property to become affixed are to be considered "tangible personal property" for sales tax purposes, affixed property to remain affixed indefinitely (though subject to a right of removal by the buyer without restraint) is not.[1]

Since this equipment *was* affixed and sold in place, it is perhaps not unnatural that both parties and the trial court sought resolution of the problem of taxability by relating it to the law of fixtures. Respondent board did so by a second-trench argument that if these items of equipment were to be regarded as fixtures at all, since they were *trade* fixtures, their nature as personal property could be established by recourse to a traditional three-factor test frequently applied by the courts and having its origin in *Teaff* v. *Hewitt,* 1 Ohio St. 511 [59 Am.Dec. 634] (see 1 Witkin, Summary of Cal. Law, p. 793, and cases cited). ▪ "There are three main factors: (1) physical annexation; (2) adaptation to use with real property; (3) *intention* to annex to realty. Of these, intention is the most significant, but the manner of annexation and the use to which the property is put are relevant in determining such intention." Witkin (*op. cit.* p. 793).

---

[1]It has been suggested by Standard that respondent board is being inconsistent in its insistence that substantially affixed equipment is tangible personal property while making no claim of a right to tax the gross receipts from improvements, i.e., buildings on leased service stations which, under the terms of the leases, Standard has the right to remove and replace as fully as in the case of the affixed equipment. While this question is not before us, we do point out a distinguishable difference. The buildings are designed to shelter the business but are not to be used in the business. In this connection the definition of an "occasional sale" in Revenue and Taxation Code section 6006.5, subdivision (a) is significant. It includes: "A sale of property not held or used by a seller in the course of an activity for which he is required to hold a seller's permit, provided such sale is not one of a series of sales sufficient in number, scope and character to constitute an activity requiring the holding of a seller's permit."

Respondent, minimizing "physical annexation" in the application of this three-factor test, found apt an allusion to "constructive severance" in a decision of this court, *Kolstad* v. *Ghidotty*, 212 Cal.App.2d 228 [28 Cal.Rptr. 123]. The trial court adopted this theory in its memorandum opinion.

As so frequently seems to happen, however, when one seeks an all-inclusive test to apply to a variety of different and logically unrelated legal problems having one, and only one, common factor (here the "fixture" factor), obsession with that effort obscures the end sought. One cannot "see the forest for the trees." ▮ We heed the warning of Professor Horowitz (in *The Law of Fixtures in California, A Critical Analysis*, 26 So.Cal.L.Rev., pp. 21, 22): "What difficulty there has been with the development of a satisfactorily clear and just 'law of fixtures' has largely been due to the attempt to resolve far too many kinds of legal problems by determining nothing more than whether a particular tangible physical object has become a 'fixture.' . . .

"This confusion, with a search for one all-pervasive all-inclusive fixtures 'test,' and the consequent oversimplification in the statement and solution of problems in this field, results in the obscuring of the policy considerations which should lie behind the solution of those problems. There is no separate universe of the law in which objects are either fixtures or not, nor is there any omnipotent force which makes metaphysical changes in physical objects, changing them from 'personalty' into 'fixtures.' Terms such as 'realty,' 'personalty' and 'fixtures' should be recognized to be not only descriptions of fact but also convenient but confusing descriptions of the nature of legal relations between persons in various factual situations. The use of a mechanical fixtures test for all problems, or the statement of all issues in terms of whether or not a particular object has become a fixture or realty, whatever may be the nature of the underlying policy problem, should be recognized to lead to obscuring of the pertinent policy factors which should be considered in a particular case, thereby erecting a barrier to clear analysis."

The contentions of Standard may be summarized as follows: It relies first upon two provisions of the Revenue and Taxation Code, sections 104 and 105. The first of these sections, 104, provides in part: "'Real estate' or 'real property' includes: . . . (c) Improvements." The second section, 105, says: "'Improvements' includes: (a) All buildings, structures, fixtures, . . ." etc. This being a part of the Revenue

and Taxation Code, Standard argues that these are fixtures and, therefore, for tax purposes, fixtures being improvements, ergo real property, they are nontaxable under a tax law which reaches only receipts from personal property. Its principal reliance, in support of this theory, is upon *Trabue Pittman Corp.* v. *County of Los Angeles,* 29 Cal.2d 385 [175 P.2d 512]. There the right of the county to assess and tax as real property affixed counters, tellers' cages and similar property of a national bank was involved. The bank's lease permitted these to be removed during or upon termination of the bank's lease as "trade fixtures." Since Congress had not given consent to state taxation of the personal property of a national bank, this property could only be assessed if classed as real property. The Supreme Court (per Justice Spence) held that it was so to be classified for purposes of property taxation. The decision, as pointed out by Standard, was upon three grounds: first, because provisions of the Revenue and Taxation Code, sections 104 and 105, combined to class them as "fixtures-improvements-real property" for tax purposes; secondly, because agreements between the parties do not affect third parties and therefore do not affect the state or its taxing agencies; and, thirdly, trade fixtures should be regarded as real property in the interest of uniformity of taxation. Conceding that *Trabue Pittman* was a case involving property taxation, Standard argues that all of the grounds stated above nevertheless apply with equal force where a sales tax is involved. With this we cannot agree.

1. *Re the Contention that Revenue and Taxation Code Sections 104 and 105 Require that this Equipment be Regarded as Real Property for Sales Tax Purposes.*

The Revenue and Taxation Code has two divisions entitled respectively "Property Taxation" and "State Taxes." Preceding both divisions are 32 sections entitled "General Provisions." Therein are definitions applicable to *both* the divisions which follow them. It is significant that the statutory "definitions" (or more accurately stated, categorizations) relied upon by Standard have not been included among the 32 definitive sections of these "General Provisions." Division 1, "Property Taxation," has 10 "Parts," of which part 1 is entitled "General Provisions" (§§ 101-134). Section 101 thereof states: "Unless the context otherwise requires, the general provisions hereinafter set forth govern the construction *of this division.*" (Italics supplied.) Since sec-

tions 104 and 105 in part 1 are a part of "this division," i.e., division 1, and since their context does not "otherwise require," there is no express direction by the Legislature compelling application of the definitions given in the General Provisions of division 1 to the Sales and Use Tax Law contained in division 2.

*Trabue Pittman* contains language (29 Cal.2d at p. 393), "[i]t is well settled that for purposes of taxation the definitions of real property in the revenue and taxation laws of the state control whether they conform to definitions used for other purposes or not." There is similar language in *San Diego Trust & Savings Bank* v. *County of San Diego*, 16 Cal. 2d 142, 147 [105 P.2d 94, 133 A.L.R. 416], also relied upon by Standard. But both of these cases were concerned only with the question whether the affixed equipment therein involved was to be deemed real property for ad valorem property taxation purposes and thus taxable by the county as such.

We find nothing in either case, or in the cases cited to support the quoted statement, holding or inferring that because sections 104 and 105 refer to "real property" as including "improvements" and the latter as including "fixtures" in the assessment of property taxes this must be accepted *as a legislative mandate* to regard removable trade fixtures as real property and not as "tangible personal property" for sales tax purposes. On the contrary, the positioning of these definitive sections in the code and the restrictive language of section 101 negates any such mandate. (This is not to say, of course, that a definitive section of one code division cannot be applied to a fact to be found in another division where apposite. It is to say that the definition cannot be regarded as binding where its application seems to defeat the legislative intent.)

2. *Re the Contention that Agreements between Private Parties as to the Nature of Their Property Can Have No Effect on a Taxing Agency.*

The decision in *Trabue Pittman* recognizes that an agreement between a landlord and tenant as to ownership, right to detach, remove and replace trade fixtures during, and upon the termination of, a lease, is an important, and perhaps determinative, factor in the categorization of such equipment as personal property where only their rights are to be considered. It held, however, that where a taxing agency was involved it was not, and should not be, concerned with the agreement. But again the problems of an assessor in

property taxation was the court's focal point. It points out (on p. 392 of 29 Cal.2d) that assessors "should not be frustrated or hindered in performing their vital functions by the necessity of ferreting out the often undisclosed and secret intentions of lessors and lessees relative to the terms of a lease. For the most part, assessors must be allowed to act on the basis of outward appearances."

Consideration of the nature of a sales tax makes it apparent that such reasoning, unanswerable when property tax assessment is involved, has no relevancy when applied to the functions of the board and its auditors in ascertainment and assessment of a sales tax upon the sale of a business, or upon any substantial, or bulk, sale. Their ascertainment of taxable gross receipts *will usually depend* upon an examination of the parties' agreement to ascertain the true nature of the transaction and of property involved, the interests of the parties therein, whether the sale is at retail, whether it is an excepted "occasional sale," etc. And frequently the scrutiny of the auditor must be a close one to discover the real nature of the agreement in transactions, the intricacies of which may sometimes seem—at least superficially—to be contrived. (See e.g., *Union Oil Co.* v. *State Board of Equalization,* 60 Cal.2d 441, 446 [34 Cal.Rptr. 872, 386 P.2d 496].) In short, the sales tax auditors simply cannot "act on the basis of outward appearances." (29 Cal.2d at p. 392.)

3. *Re the Contention that it is Necessary to Regard This Equipment as Real Property to Achieve Uniformity of Taxation.*

Standard relies upon the following statement in *Trabue Pittman* (at p. 392 of 29 Cal.2d): "There can be uniformity of taxation only to the extent that there is a uniform classification of real and personal property. Disregard of any distinction between improvements installed by tenants and improvements installed by an owner of property insofar as taxation is concerned expedites the work of the assessor and tends toward uniformity."

Again it will be seen that this statement addresses itself only to the assessment of property as property; and that when the nature of property is to be considered only in the ascertainment of the nature of the gross receipts therefrom its applicability fails. This can best be illustrated by a further reference to the language of *Trabue Pittman* (at p. 398): " 'It is the purpose of uniformity of taxation that all prop-

erty in the state carry its fair burden and contribute its just amount in taxation to the support of the various public bodies which levy taxes.' [Citation.] But to hold the doctrine of trade fixtures operative in a tax matter merely because property is claimed under two ownerships instead of one would be to discriminate in favor of one owner and against another owner of similar property, not only because of the possibility of a differential between the real and personal property tax rates for a given year but because many special assessment districts impose burdens upon real property but not personal property. [Citations.]''

The wisdom of this statement as applied to the assessment of property tax will not be questioned. But to classify the equipment here involved as real property in a sales tax assessment would embrace the very tax discrimination and inequality deemed diligently to be avoided. ▆▆ It is the aim of this legislation, as we read its provisions, to reach the gross receipts from all retail tangible personal property sales when the property is to be used, i.e., not resold, by the buyer. (Sato: *op. cit.* p. 453.) ▆▆ As we have hereinbefore stated, equipment of the type here involved, if unaffixed, in the hands of the seller but intended to be affixed by the buyer, or if affixed in the hands of the seller but to become unaffixed upon the sale, is unquestionably taxable ''tangible personal property.'' And as we have also hereinbefore noted, we cannot conceive that the Legislature intended that gross receipts from the sale of the very same property should escape taxation simply because, although readily removable by the owner as a matter of right, it was sold in place and with a present intent that it remain in place. Neither *Trabue Pittman, supra,* nor *San Diego Trust & Savings Bank, supra,* nor any other authority cited requires us to ascribe such intent to the Sales and Use Tax Act, and we do not so construe it.

The judgment is affirmed.

Friedman, J., and Van Dyke, J.,* concurred.

A petition for a rehearing was denied March 1, 1965, and appellant's petition for a hearing by the Supreme Court was denied March 31, 1965. McComb, J., and Peters, J., were of the opinion that the petition should be granted.

---

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.